MALIK AZ'RAEL MOSBY,

                                        Petitioner,

        v.
                                                        9:12-CV-1543
SUPERINTENDENT O'MEARA,                                    (FJS/ATB)

                                        Respondent.

MALIK AZ'RAEL MOSBY, Petitioner pro se
THOMAS B. LITSKY, AAG, for the Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Frederick J. Scullin, Senior United States District Judge.

Presently before this court is a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition ("Pet.")) (Dkt. No. 1). Petitioner brings this action, challenging a judgment of conviction rendered on May 23, 2006, after a jury trial in the Tompkins County Court. Petitioner was convicted of two counts of Criminal Sale of a Controlled Substance, Third Degree; two counts of Criminal Possession of a Controlled Substance, Third Degree; and ultimately sentenced to a aggregate prison term of 10 years incarceration with 3 years post-release supervision.

Petitioner raises the following claims for this court's review:

1.      The People violated his right to counsel and *Brady* by failing to
        disclose petitioner's videotaped statement that he made to the
        police following his arrest.

2. The trial court, counsel, and a jail employee violated petitioner's due process rights by not ordering a competency examination and by denying petitioner mental health treatment.

3. A state official impeded petitioner's post-judgment motion by failing to disclose relevant mental health records.

4. His trial counsel was ineffective because he: (a) failed to request a competency hearing; (b) waived a preliminary hearing; (c) failed to call a confidential informant at trial; and (d) failed to request a missing witness charge for the informant.

5. Petitioner's appellate counsel was ineffective because she did not assert that: (a) the County Court Judge had a conflict of interest and therefore should not have presided over petitioner's April 2006 trial; (b) petitioner was incompetent to stand trial; and (c) the People violated *Brady* by failing to disclose petitioner's videotaped police statement.

(Pet. 7–16). Respondent has filed a memorandum of law in opposition to the petition, together with the pertinent state court records. (Dkt. Nos. 22, 23, 24). For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

I. <u>Relevant Facts</u>

Petitioner became the target of a drug investigation as the result of information received from a confidential informant. *See People v. Mosby*, 69 A.D.3d 1045, 1046–47 (3d Dep't 2010). On July 27, 2005, the informant introduced petitioner to an undercover police officer, who purchased a fentanyl transdermal patch and pills containing oxycodone from petitioner. *Id.* The undercover officer discussed future

purchases from petitioner and made arrangements for how she would contact petitioner. Petitioner informed the officer that he would have a new supply of fentanyl on the 19th of August. *Id.* The undercover officer was wearing a transmitter that recorded her conversation with petitioner, which was also monitored by other police officers. *Id.* Two weeks later, the undercover officer contacted petitioner, and on August 10, 2005, while wearing a transmitter, purchased cocaine from him. *Id.* On August 19, 2005, the undercover officer again contacted petitioner, and this time purchased cocaine, oxycodone, and fentanyl. *Id.* A sealed indictment was returned soon thereafter, charging petitioner with the August 10, 2005, and August 19, 2005 narcotics sales. *Id.* The indictment did not contain any charges related to the first sale that had occurred on July 27, 2005. *Id.*

Petitioner made a timely demand prior to trial for all *Rosario*[1] material, and was provided with statements and recordings made by the People's trial witnesses in connection with the drug transactions charged in the indictment. *See People v. Mosby*, 69 A.D.3d at 1047. Petitioner was not provided with any material regarding the July 27, 2005 transaction, even though the undercover officer who made the buy and the police officer who surveilled the transaction testified at petitioner's trial about the August 10th and 19th purchases.

Petitioner moved to vacate his conviction pursuant to N.Y. C.P.L. 440.10 on the

---

[1] Under New York law, a prosecutor must turn over "*Rosario* material"—any "written or recorded statements . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relate to the subject matter of the witness's testimony." N.Y. Crim. Proc. Law § 240.45(1)(a); *People v. Rosario*, 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448 (N.Y. 1961).

3

ground, inter alia, that *Rosario* material had not been provided to him as to some of the witnesses who testified at trial. On January 14, 2010, the Appellate Division remitted the matter to the county court to determine whether the People had withheld *Rosario* material. *People v. Mosby*, 69 A.D.3d 1045 (3d Dep't 2010). If so, the trial court was instructed to determine whether there would have been a reasonable possibility of a different verdict if the material had been disclosed. *Id*.

The county court held a hearing and found that there was no reasonable possibility that timely disclosure of the *Rosario* material would have resulted in a different verdict. On November 18, 2010, the Appellate Division unanimously affirmed petitioner's judgment of conviction, agreeing with the county court that disclosure of the *Rosario* material would not have resulted in a different verdict and rejecting petitioner's additional claims. *People v. Mosby*, 78 A.D.3d 1371 (3d Dep't 2010). On March 24, 2011, the New York Court of Appeals denied petitioner leave to appeal. *People v. Mosby*, 16 N.Y.3d 834 (2011).

## II. Generally Applicable Law

### A. The AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).[2] This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __ , 131 S. Ct. 1388, 1398 (2011) (citations omitted).

Under section 2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e) (1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and

---

[2] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107–113 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.*

fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B.    Exhaustion

Petitioner must exhaust all his state court remedies prior to filing a petitioner for habeas corpus under section 2254. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Respondent initially argued that many of petitioner's claims were unexhausted. (*See* Resp't's Mem of Law; Dkt. No. 23). However, respondent's counsel filed a letter on August 16, 2013, stating that his analysis was based on records and information initially provided by the Tompkins County District Attorney's Office. (Resp't Letter dated August 16, 2005; Dkt. No. 36). Upon further review of petitioner's subsequent submissions, respondent concluded that petitioner's claims had been exhausted. This court agrees, and will turn to an analysis of the merits of petitioner's claims.

## III.    Right to Counsel

### A.    Legal Standard

A federal habeas court may only review claims arising under federal law or the Constitution. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."). "The New York Court of Appeals has consistently interpreted the right to counsel under the New York Constitution more broadly than the Supreme Court has interpreted the federal right to counsel." *Claudio v. Scully*, 982 F.2d 798, 801 (2d Cir. 1992).

There are two well-defined situations in which the right [to counsel] is

said to attach indelibly under the State Constitution and a waiver, notwithstanding the client's right to waive generally, will not be recognized unless made in the presence of counsel. The first, similar to the Federal right, deals with waivers after formal proceedings have commenced. The second, recognized only in New York, relates to uncharged individuals in custody who have retained or requested an attorney. Police authorities may not question them in the absence of counsel.

*People v. Bing*, 76 N.Y.2d at 331, 339 (1990). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Therefore, to the extent that New York state law provides greater protection than federal constitutional requirements, it defines state law only, and any misapplication of that state law is not cognizable on federal habeas review.

### B.    Application

The police executed a search warrant at petitioner's house and arrested him on August 20, 2005, after which he was taken to the Ithaca Police Department Headquarters, where petitioner was advised of his rights and questioned on videotape. (Ex. H. at A28–29; Dkt. No. 24-8 at 45–46). In his videotaped statement, petitioner stated that his doctor had prescribed fentanyl and other medication, but that his doctor no longer wished to treat petitioner after his urine tested positive for cocaine. (Ex. H. at A28; Dkt. No. 24-8 at 45).

Petitioner argues that at the time of his arrest on August 20, 2005, he was "represented by counsel Robert Lalonde Esq. on a[n] unrelated charge," and that "[c]ounsel attached at the time of the arrest." (Pet. 7; Dkt. No. 1). Petitioner's claim

is based on the broader New York state law interpretation of the right to counsel, not the narrower federal right to counsel. To the extent petitioner argues that police should not have questioned him because he was represented by counsel, this court finds that this claim is noncognizable on federal habeas review and should be dismissed. In any event, the remedy for such a violation would have been suppression of the statement. Petitioner did not testify at his trial, and his statement to the police, including the videotape of the statement, was never introduced into evidence. Thus, petitioner's right to counsel claim may be dismissed.

## IV.   *Brady*[3] **Claim**

### A.   **Legal Standard**

A prosecutor has the duty under *Brady v. Maryland*, 373 U.S. 89 (1963) to produce evidence favorable to the defense. To prevail on a *Brady* claim, petitioner must show that the prosecution suppressed evidence favorable to him and that the evidence was material either to guilt or punishment. *Brady*, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1962) articulated the federal constitutional requirement that the prosecution disclose potentially exculpatory or impeachment material.

If defense counsel knew or should have known of essential facts permitting him to take advantage of exculpatory evidence, then the evidence is not considered withheld for *Brady* purposes. *United States v. Zackson*, 5 F.3d 911, 918 (2d Cir. 1995). Disclosure of impeachment evidence is also required under *Brady*. *United States v. Bagley*, 473 U.S. at 676. Evidence relevant to impeachment is material if the "witness whose testimony is attacked supplied the only evidence linking [the defendant] to the crime, or where the likely impact on the witnesses's credibility would have undermined a critical element in the prosecution's case." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996). When the issue is late disclosure of *Brady* material, a new trial is required only when the defendant was deprived of a meaningful opportunity to use the material. *Freeman v. Kuhlman*, No. 96 CV 3749, 1998 WL 661469 (E.D.N.Y. Aug. 3, 1998) (citing *People v. Cortijo*, 70 N.Y.2d 868, 870, 523 N.Y.S.2d 464, 464 (1987)).

## B. Application

Petitioner argues that the "denial of the videotaped statement of arrest" constituted a *Brady* violation. (Pet. 10). Here, petitioner has alleged nothing indicating that the videotaped statement was exculpatory, as the police report summary of the statement (attached by petitioner to his petition) simply states that petitioner told police that his doctor had prescribed medication to him, and that the doctor no longer wished to treat petitioner after a urine test had come back positive for cocaine. (*See* Ex. H at 28, Dkt. No. 24-8). Petitioner was well-aware of his statement to police, and the videotape of that statement "is not considered to have been

9

suppressed within the meaning of the *Brady* doctrine." *United States v. Maldonado*, 112 F. App'x 768, 770 (2d Cir. 2004). The Appellate Division's denial of petitioner's claim based on the alleged *Brady* violation was not contrary to, or an unreasonable application of, Supreme Court precedent, and should therefore be dismissed.

## V.    **Mental Health Treatment**

Petitioner argues that he was denied mental health treatment while at Tompkins County Jail, which violated his Constitutional Rights. (Pet. 12). Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. *Preiser v. Rodrigruez*, 411 U.S. 475, 500 (1973). Claims alleging the denial of mental health treatment are therefore not cognizable in a habeas corpus petition, and petitioner's claim based on the alleged denial of mental health treatment while he was being held at Tompkins County Jail should be dismissed. *See Brown v. Attorney General of NYS*, No. 09-CV-1056, 2011 U.S. Dist. LEXIS 63494, at *2 (W.D.N.Y. June 15, 2011) (Eighth Amendment claim concerning unnecessary psychiatric treatment is not cognizable under 28 U.S.C. § 2254).

## VI.    **Competency Hearing**

Petitioner also appears to argue in his petition that in addition to not receiving mental health treatment, the lack of a "§730 exam"[4] deprived him of his constitutional rights. (Pet. 12).

---

[4] Under New York law, when there is evidence that a defendant may be incompetent, the court must order the appropriate state or local mental health services official to designate two qualified psychiatric examiners to examine the defendant. *See* N.Y. C.P.L. §§ 730.10(4), (7), 730.20(1), 730.30(1).

## A.  Legal Standard

"The constitutional right to due process is violated when a person who is incompetent is convicted of a crime."  *Harris v. Kuhlmann*, 346 F.3d 330 (2d Cir. 2003); *see also Indiana v. Edwards*, 554 U.S. 164, 170 (2008) ("[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'").  A defendant is competent to stand trial if he possesses "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."  *See Dusky v. United States*, 362 U.S. 402, 402 (1960); *accord Indiana v. Edwards*, 554 U.S. at 169–70.

## B.  Application

As will be discussed below, petitioner's trial counsel did not indicate that petitioner's competence to stand trial was at issue.  Additionally, petitioner's statement at his sentencing demonstrated that he understood the nature of the charges brought against him and that he was capable of participating in his own defense.  (*See* May 23, 2006 Sentencing 7–10; Dkt. No. 24-2 at 289–292).  Since no factors arose during petitioner's trial that would have called petitioner's competency into doubt, the trial judge was not presented with any reasonable cause upon which to question petitioner's competence to participate in the proceedings.  *See United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995) ("[T]he Due Process Clause [does not] require[] a hearing in every instance; a hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent.") (citing *Pate v. Robinson*, 383 U.S. 375 (1966)).

The fact that trial counsel never moved for a competency examination and never called petitioner's competency into question also indicates petitioner's competence. *See Pate*, 383 U.S. at 391 ("The conclusive factor [regarding the defendant's competence] is that [the defendant's] own lawyers, the two men who apparently had the closest contact with the defendant during the proceedings, never suggested he was incompetent to stand trial and never moved to have him examined on incompetency grounds during trial."). Petitioner also appears to argue that because he was receiving some mental health treatment prior to his arrest, he was incompetent to stand trial. (*See* Pet. 12). However, "some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986).

Accordingly, the Appellate Division's dismissal of petitioner's claims (Dkt. No. 31-1 at CM/ECF p. 58), based on failure to conduct a competency hearing is not contrary to or an unreasonable application of Supreme Court precedent and should therefore be dismissed.

## VII.  **Effectiveness of Trial Counsel**

The petitioner claims that trial counsel provided ineffective assistance by:  (1) failing to request a competency hearing; (2) waiving a preliminary hearing; (3) not calling a confidential information as a witness at trial; and (4) not requesting a missing witness charge for the information.  (Pet. 7–9).  The court finds that petitioner has failed to establish that the state courts' rejection of these ineffective-assistance claims on the merits involved an unreasonable application of clearly established Federal law,

as determined by the Supreme Court of the United States.

## A. Legal Standards

The general standards for ineffective assistance of counsel were articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687–696 (1984). This test requires an affirmative showing that counsel's performance fell below an objective standard of reasonableness, and that prejudice resulted because there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 688, 694. An ineffective-assistance claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

When assessing counsel's performance, courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (quoting *Strickland*, 466 U.S. at 689). Courts should not use hindsight to second-guess sound tactical decisions made by attorneys. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (citing *Strickland*, 466 U.S. at 689).

In evaluating the prejudice component of *Strickland*, a "reasonable probability" that the outcome of the proceeding would have been different means "a probability sufficient to undermine confidence in the outcome." *Strickland* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Santone v. Fischer*, 689 F.3d 138, 155 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 693). Unlike

the performance determination, the prejudice analysis may be made with the benefit of hindsight. *McKee v. United States*, 167 F.3d at 106–107 (citing, *inter alia*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

The "AEDPA requires the federal habeas court to accord deference to the state court's ruling on claims of ineffective assistance of counsel." *Santone v. Fischer*, 689 F.3d at 154. As the Supreme Court stated in *Harrington v. Richter*, 131 S. Ct. at 788:

> The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

(citations omitted).

## B.    Application

Petitioner's first complaint regarding trial counsel is that he failed to seek a preliminary hearing.[5] (Pet. 8). However, there is "no federal constitutional right to a preliminary hearing." *Strong v. Mance*, No. 07-CV-878, 2010 U.S. Dist. LEXIS 39575, at *21–22 (N.D.N.Y. April 2, 2010) (collecting cases). Additionally, waiving a preliminary hearing does not constitute ineffective assistance of counsel. *See Alston v. Giambruno*, No. 06-CV-6339, 2009 U.S. Dist. LEXIS 119045, at *16–17 (W.D.N.Y. Dec. 21, 2009) (collecting cases).

Petitioner's second complaint about trial counsel is that he failed to call a

---

[5] A preliminary hearing is held to determine whether there is reasonable cause to believe that a defendant has committed a felony and should be held for grand jury action. *See* N.Y. C.P.L. § 180.70(1).

14

confidential informant to testify at petitioner's trial. Trial counsel's decision not to call the witness at trial was a strategic decision, and the testimony of a confidential informant who was not even present at the two buys that were the subject of the indictment would likely not have assisted petitioner's case. (*See* April 10, 2006 Trial Tr. 11). Since the confidential informant's contact with petitioner was during the uncharged July 27, 2005 drug sale, trial counsel's decision not to call the witness also prevented the jury from becoming aware that petitioner was involved in an additional sale. Calling the confidential informant would have likely prejudiced petitioner more than helped him.[6] "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)). "A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." *United States v. Eymann*, 313 F.3d 741, 743 (2d Cir. 2002).

As to petitioner's claim based on trial counsel's alleged failure to request a missing witness charge for the confidential informant, to warrant such a missing witness charge under New York law, the requesting party must show that: 1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, 2) the witness would naturally be expected to provide non-

---

[6] The confidential informant was not called as a witness at the 440.10 hearing on May 28, 2010 because he was "completely uncooperative and has maintained this lack of cooperation for the entire time that [petitioner's] appeal [had] been pending." (May 28, 2010 Hearing 59; Dkt. No. 24-30).

cumulative testimony favorable to the party who has not called him; and 3) the witness is available to such party. *People v. Gonzalez*, 68 N.Y.2d 424, 427 (1986). As discussed above, the confidential informant was present during the uncharged July 27, 2005 drug sale, but not during the later August sales charged in the indictment. The July sale was not mentioned during the trial, and had petitioner's trial counsel requested a missing witness charge, the prosecutor may have responded by calling the informant to petitioner's detriment. *See People v. Randall*, 177 A.D.2d 661 (2d Dep't 1991) (the trial court did not err in allowing the People to present evidence of uncharged drug crimes to negate the agency defense.) Trial counsel's decision not to request a missing witness charge was a tactical decision and did not constitute ineffective assistance.

Finally, petitioner argues that trial counsel was ineffective for failing to request a competency hearing. (Pet. 12). Trial counsel gave no indication that petitioner had any difficulty understanding the proceedings against him or that he had any difficulty consulting with trial counsel. *See Dusky v. United States, supra*. "A failure by trial counsel to indicate that the [petitioner] had any difficulty in assisting in preparation or in comprehending the nature of the proceedings provides substantial evidence of the [petitioner's] competence." *United States v. Baadhio*, 439 F. App'x 43, 44 (2d Cir. 2011) (quoting *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (internal quotation marks omitted). As discussed above, petitioner's statement at his sentencing demonstrated that he understood the nature of the charges brought against him and that he was capable of participating in his own defense. (*See* May 23, 2006

Sentencing 7–10; Dkt. No. 24-2 at 289–292). Petitioner has failed to establish that trial counsel erred by not requesting a competency hearing.

Overall, trial counsel's performance was effective. Trial counsel filed an omnibus motion, including a request for *Brady* materials, a request for a bill of particulars, and a demand for discovery. (*See* Ex. A at A21–30). At the *Sandoval* hearing, counsel successfully persuaded the court that petitioner should not be impeached concerning certain convictions if he testified at trial. (April 10, 2006 Jury Trial Tr. 5–9; *see also People v. Sandoval*, 34 N.Y.2d 371 (1974). Trial counsel thoroughly cross-examined the People's witnesses, eliciting from Investigator Rice that when she initially contacted petitioner for drugs, he told Rice that he would have to get some drugs from "his man," and that he would have to see his doctor before he could get her prescription drugs. (*See* April 10, 2006 Jury Trial 62–69; Dkt. No. 24-29). In order to develop petitioner's agency defense, trial counsel elicited through Trooper Cowdrick that she called petitioner several times looking for prescription drugs, eventually going to petitioner's house with Rice, and then drove petitioner to the pharmacy so he could fill his prescription.[7] (April 10, 2005 Jury Trial 94–95; Dkt. No. 24-29). Trial counsel also made appropriate objections. (*See* April 10, 2005 Jury Trial 55, 79, 80, 85, 98, 100, 125; Dkt. No. 24-29).

In his summation, trial counsel developed the themes he had explored while

---

[7] The "agency defense" was explained by the Appellate Division: "A defendant cannot be convicted of the illegal sale of narcotics if, at the time of the transaction, it is established that he is acting 'solely as the agent of the buyer.'" *People v. Mosby*, 78 A.D.3d 1371, 1373 (3d Dep't 2010) (citing *People v. Lam Lek Chong*, 45 N.Y.2d 64, 73 (1978)).

cross-examining witnesses, arguing that petitioner was not a drug dealer, but had been targeted by police. (T. 217, 221). Trial counsel further suggested that the "two very attractive sophisticated, trained, manipulative Investigators" used petitioner to "make him a drug dealer" with regard to the prescription drugs. (April 10, 2006 Jury Trial 221; Dkt. No. 24-29). Trial counsel also previewed the agency charge included in the court's final jury instruction during his summation. (April 10, 2006 Jury Trial 239–40).

The Appellate Division rejected petitioner's claims of ineffective assistance of trial counsel, and considered the fairness of the proceedings as a whole, as well as petitioner's specific complaints regarding trial counsel's performance. *See People v. Mosby*, 78 A.D.3d 1371, 1372–1376 (3d Dep't 2010). Accordingly, the Appellate Divisions rejection of plaintiff's claims based on ineffective assistance of trial counsel was not contrary to or an unreasonable application of Supreme Court precedent; therefore plaintiff's claims related to the alleged ineffective assistance of trial counsel should be dismissed.

## VIII. Effectiveness of Appellate Counsel

Petitioner argues that Appellate Counsel was ineffective because she did not assert that: 1) the County Court Judge had a conflict of interst and therefore should not have presided over petitioner's April 2006 jury trial; 2) the People violated *Brady* by not disclosing petitioner's videotaped police statement; and 3) petitioner was incompetent to stand trial.

## A. Applicable Law

A defendant has the right to effective counsel on appeal, *Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985), and the *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). In the appellate context, counsel is not required to advance every non-frivolous argument that could be made. *Aparicio*, 269 F.3d at 95 (citing *Evitts*, 469 U.S. at 394; *Jones v. Barnes*, 463 U.S. 745, 75 (1983)). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). To satisfy the prejudice prong of Strickland, petitioner must show that "absent [appellate] counsel's deficient performance, there was a reasonable probability that [petitioner's] appeal would have been successful before the state's highest court." *James v. Artus*, 03 Civ. 7612, 2005 WL 859245, at *14 (S.D.N.Y. Apr. 15, 2005) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000)).

## B. Application

Petitioner's Appellate Counsel provided adequate representation. Prior to filing the direct appeal, Appellate Counsel filed a motion to vacate petitioner's judgment of conviction and to set aside petitioner's sentence under N.Y. Crim. Proc. Law §§ 440.10 and 440.20. (Ex. A at A70–A113; Dkt. No. 24-1). When the County Court denied those motions, counsel filed a motion to renew and obtained permission to appeal the denial of petitioner's post-convictions motions in conjunction with

petitioner's direct appeal. (Ex. D at A6–A87, Dkt. No. 24-3; Ex. A at A2, Dkt. No. 24-1; Ex. D at A4–5, Dkt. No. 24-3).

Appellate Counsel successfully gained a remand on the *Rosario* issue. When the Appellate Division remitted petitioner's case for a hearing on the *Rosario* issue, appellate counsel called and examined four witnesses at the hearing. (May 28, 2010 Hearing 7–56; Dkt. No. 24-30). Appellate counsel submitted a post-hearing memorandum of law, a supplemental brief to the Appellate Division, and after the Appellate Division denied petitioner's appeal, she sought leave to appeal to the New York State Court of Appeals. (Ex. G, Dkt. No. 24-7; Ex. H, Dkt. No. 24-8; Ex. K, Dkt. No. 24-15).

Petitioner argues that appellate counsel should have argued in his direct appeal that County Court Judge Sherman had a conflict of interest and should not have presided over petitioner's April 2006 trial. (Pet. 10–11). Petitioner includes an internet article that reported that due to a personal relationship between Judge Sherman and a Tompkins County probation officer in 2003, the Tompkins County Probation Department stopped assigning the probation officer to cases presided over by Judge Sherman. (*See* Dkt. No. 1-1 at 7). After the probation officer was promoted to County Probation Director in 2008, the article reported that Judge Sherman would recuse himself from all cases involving the Tompkins County Probation Department.[8] (*Id.*). There is no evidence that a conflict existed at the time of petitioner's trial in

---

[8] Because petitioner alleges that he was a "non compliant participant in the [probation] program," he appears to argue that this created a conflict of interest. (*See* Pet. 10).

2006, and there would have been no basis for appellate counsel to assert such a claim.

Additionally, petitioner's complaint that appellate counsel failed to assert a *Brady* claim must fail, because as discussed above, the videotaped police statement did not fall within the *Brady* doctrine. Similarly, petitioner's claim of incompetence to stand trial is without merit, and counsel did not err in failing to assert the claim. "The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a criminal defendant] is entitled." *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (citations and inner quotations omitted). The Appellate Division's summary denial of petitioner's writ of error coram nobis was therefore not contrary to or an unreasonable application of Supreme Court precedent. *See People v. Mosby*, 101 A.D.3d 1698, 1698 (4th Dep't 2012). Accordingly, petitioner's claims based on ineffective assistance of appellate counsel should be dismissed.

## IX.  **Mental Health Documents**

Petitioner appears to argue that, because the Tompkins County Mental Health Department allegedly ignored petitioner's request for his records for several years, ultimately disclosing only partial records, that petitioner's ability to make post-judgment motions was impaired. (*See* Pet. 13–14). It is difficult to see how petitioner's ability to file post-judgment motions was impaired, as he successfully filed a pro se 440.10 motion on September 22, 2011, and a pro se coram nobis motion dated June 18, 2012, both of which included arguments related to his mental health. (*See* Ex. N, Dkt. No. 24-18; Ex. Q, Dkt. No. 24-21). Petitioner also apparently

brought an Article 78 proceeding to compel Tompkins County Mental Health to provide copies of his mental health records, and the order denying petitioner's motion indicates that Tompkins County Mental Health sent petitioner a copy of his records on or about September 4, 2012, which petitioner confirmed that he received. (Tompkins County Supreme Court Decision and Order dated January 4, 2013 at 1–2; Ex. 24-28).

Petitioner does not explain how he was prejudiced by the alleged delay. Even were he actually prejudiced and the records contained information relevant to his pro se 440.10 motion, he could file a motion to renew with the trial court. *See People v. Lawrence*, 38 Misc. 3d 1204(A) (Bronx Co. Sup. Ct. Dec. 26, 2012) (recognizing a motion to renew in a N.Y. C.P.L. 440.10 proceeding). Accordingly, the Appellate Division's rejection of petitioner's claim related to the alleged delay of his mental health records is not contrary to or an unreasonable application of Supreme Court precedent and should therefore be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:  September 26, 2013

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge